UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAVID BORZOUEI,<br><br>                    Plaintiff,<br><br>v.<br><br>RENA BITTER, et al.,<br><br>                    Defendants. | Case No. 22-cv-872-MMA (KSC)<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>[Doc. No. 5] |

      On June 15, 2022, Plaintiff Navid Borzouei ("Plaintiff") initiated this immigration action against Defendants Rena Bitter, Sean Murphy, and Antony Blinken (collectively, "Defendants"). *See* Doc. No. 1 ("Compl."). Plaintiff seeks judicial intervention in the processing of his wife's immigrant visa application. *See id.* Defendants now move to dismiss both causes of action against them. Doc. No. 5. Plaintiff filed an opposition to Defendants' motion, to which Defendants replied. *See* Doc. Nos. 8, 9. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7.1.d.1. *See* Doc. No. 7. For the following reasons, the Court **GRANTS** Defendants' motion to dismiss.

# I. Background

Plaintiff is a lawful permanent resident of the United States. *See* Compl. ¶ 6. In September 2018, he filed a visa petition, Form I-130, for his wife, Negin Nilforoush, with U.S. Citizenship and Immigration Services ("USCIS"). Compl. ¶ 10. Plaintiff's intention was to obtain lawful permanent resident status for his wife so she could join him in the United States. *Id.* "In November 2019, USCIS approved this visa petition." *Id.* ¶ 10. Since then, "Plaintiff and his wife have inquired as to the status of this visa application on numerous occasions and received no meaningful responses." *Id.* ¶ 12. Plaintiff contends that because Defendants have not "finished processing this visa" he and his wife continue to suffer. *Id.* ¶ 1.

Consequently, Plaintiff brings two causes of action against Defendants. First, pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), Plaintiff asks the Court to compel Defendants to adjudicate the visa. Second, Plaintiff seeks a writ of mandamus compelling adjudication of the visa pursuant to the Mandamus Act, 28 U.S.C. § 1361. Namely, Plaintiff asks for an order mandating that Defendants process the visa application within fifteen (15) calendar days or as soon as reasonably possible. *Id.* ¶ 31.b. Defendants now move to dismiss both causes of action against them under Rules 12(b)(1) and 12(b)(6).

# II. Legal Standards

## A.   Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S, 375, 377 (1994). As such, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Without subject matter jurisdiction, a federal court is without "power" to hear or adjudicate a claim. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 (9th Cir. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)); *Kokkonen*, 511 U.S. at 377. The plaintiff bears the burden of establishing the

1 | Court's jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562, 112 S. Ct. 2130,
2 | 119 L. Ed. 2d 351 (1992); *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168
3 | (9th Cir. 2006) (citation omitted).
4 |       Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal
5 | of an action for lack of subject matter jurisdiction.  *Warren v. Fox Family Worldwide,*
6 | *Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003); *see also White v. Lee*, 227 F.3d 1214, 1242
7 | (9th Cir. 2000).  Jurisdictional attacks under Rule 12(b)(1) can be either facial or factual.
8 | *White*, 227 F.3d at 1242.  A facial attack on jurisdiction asserts that the allegations in a
9 | complaint are insufficient to invoke federal jurisdiction, whereas a factual attack disputes
10 | the truth of the allegations that would otherwise confer federal jurisdiction.  *Safe Air for*
11 | *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).
12 |       The moving party can convert its "motion to dismiss into a factual motion by
13 | presenting affidavits or other evidence."  *Id*.  In resolving a factual attack, "[t]he court
14 | need not presume the truthfulness of the plaintiff's allegations."  *Id*. (citing *White*, 227
15 | F.3d at 1242).  "Once the moving party has converted the motion to dismiss into a factual
16 | motion . . . the party opposing the motion must furnish affidavits or other evidence
17 | necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id*. (internal
18 | quotation marks omitted) (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036,
19 | 1039 n.2 (9th Cir.2003)); *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen
20 | a question of the District Court's jurisdiction is raised . . . the court may inquire by
21 | affidavits or otherwise, into the facts as they exist.").

**B.     Rule 12(b)(6)**

23 |       A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint.  *Navarro*
24 | *v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A pleading must contain "a short and plain
25 | statement of the claim showing that the pleader is entitled to relief . . ."  Fed. R. Civ. P.
26 | 8(a)(2).  However, plaintiffs must also plead "enough facts to state a claim to relief that is
27 | plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ.
28 | P. 12(b)(6).  The plausibility standard thus demands more than a formulaic recitation of

the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Typically, if a party submits evidence from outside the pleadings in support of a motion to dismiss under Rule 12(b)(6), and a court relies on that evidence, the motion must be converted into a motion for summary judgment. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, "[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Lee*, 250 F.3d at 689.

### III. Discussion

Defendants move to dismiss both causes of action against them pursuant to Rules 12(b)(1) and 12(b)(6). *See* Doc. No. 5. The Court notes that because the Supreme Court has construed a claim seeking mandamus relief to order an agency to act under 28 U.S.C. § 1361 as "in essence" one for relief under § 706 of the APA, *Indep. Min. Co., Inc. v. Babbitt*, 105 F.3d 502, 507 (1997) (quoting *Japan Waling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)); *see also Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022), the Court "may elect" to analyze Plaintiff's APA claim only. Nonetheless, for the

sake of completeness, the Court addresses both Plaintiff's APA claim and his claim under the Mandamus Act in turn.

### A.  Administrative Procedure Act Claim

Plaintiff's first claim arises under § 706(1) of the APA.  The APA requires federal administrative agencies to address matters presented to them "within a reasonable time." 5 U.S.C. § 555(b).  The statute further provides: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Id.* § 702.  A reviewing court has the power to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).  The scope of judicial review, however, is limited.  A district court may only compel an agency to perform a ministerial or nondiscretionary act, or to take action upon a matter without directing the agency how it shall act.  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).  Additionally, the APA makes agency action unreviewable by the district court if the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Perez v. Wolf*, 943 F.3d 853, 860 (9th Cir. 2019) ("Section 701(a)(2) of the APA precludes judicial review of agency actions 'committed to agency discretion by law.'" (quoting 5 U.S.C. § 701(a)(2))).

Defendants first argue that the Court lacks subject matter jurisdiction under the APA.  *See* Doc. No. 5 at 6.  "It is beyond question . . . that the APA does not provide an independent basis for subject matter jurisdiction in the district courts." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998); *see also Califano v. Sanders*, 430 U.S. 99, 107 (1977).  However, 28 U.S.C. § 1331 confers federal subject matter jurisdiction to "all civil actions arising under the Constitution, laws, or treaties of the United States."  Plaintiff's first cause of action is pursuant to the APA, a federal statute.  *See* Compl. at 6.

The relevant immigration statutes and regulations do not provide a time within which Defendants must complete adjudication of a visa application.  Some courts have held that the APA does not confer jurisdiction where an agency is not compelled by law

to take the action in question within a certain time period. However, the Ninth Circuit has recently spoken on this issue. In *Vaz v. Neal*, the plaintiff sought to compel the Executive Office for Immigration Review ("EOIR") to complete its investigation of his complaint against his former attorney under the Mandamus Act and the APA. 33 F.4th at 1133. The district court dismissed the action, finding that it lacked jurisdiction under both the Mandamus Act and the APA. *Id.* The Ninth Circuit found that the district court erred in determining that it lacked jurisdiction under the APA. *Id.* Namely, the Ninth Circuit explained:

> Subject matter jurisdiction over an APA claim rests on the federal question statute, 28 U.S.C. § 1331. *Id.* at 1082 n.5. So the question is whether Vaz's APA claim "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Vaz alleges that he is entitled to relief under the APA, a federal statute, because the EOIR failed to perform its duties under federal regulations within a reasonable time. Vaz's APA claim therefore arises under the laws of the United States, and the district court had subject matter jurisdiction.

*Id.* at 1135. The Ninth Circuit went on to note that the EOIR had a mandatory duty to investigate the complaint because the governing regulation required the EOIR to initiate a preliminary inquiry of the complaint upon receipt. *Id.* at 1136. Relevantly, the Ninth Circuit concluded that although the regulations at issue "provide no timeframe in which an investigation must be completed" and thus, "the EOIR has no duty to expedite or complete investigations within a certain period, the EOIR does have a mandatory duty to investigate complaints . . . and it must do so within a reasonable time under the APA." *Id.* at 1137.

Here, the Court finds that Defendants have a mandatory duty to adjudicate visa petitions, *see* 22 C.F.R. § 42.81(a), and that they must do so within a reasonable time under the APA, *see* 5 U.S.C. § 555(b). Therefore, in light of the Ninth Circuit's recent holding in *Vaz*, the Court finds that it has subject matter jurisdiction over Plaintiff's APA claim.

Turning to whether Plaintiff has stated a claim, the APA provides that a "reviewing court shall compel agency action unlawfully or unreasonably delayed." *Id.* § 706(1).

> But "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Thus, a court may compel agency action under the APA when the agency (1) has "a clear, certain, and mandatory duty," *Plaskett*, 18 F.4th at 1082, and (2) has unreasonably delayed in performing such duty, *see* 5 U.S.C. § 706(1).

*Vaz*, 33 F.4th at 1135–36.

To evaluate whether an agency's delay is unreasonable under the APA, the Court turns to the six-factor balancing test set forth in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*"). *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a 'rule of reason[;]'
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;]
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake[;]
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;]
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay[;] and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 507 n.7 (quoting *TRAC*).

  Plaintiff pleads that in September 2018, he filed a visa petition with USCIS for his wife, Ms. Nilforoush, and that the petition was approved in November 2019. Compl. ¶ 10. However, he asserts that Defendants have not finished processing the visa, "which remains stuck." *Id.* ¶ 1. He contends that although he and his wife have inquired as to the status of the visa on numerous occasions, they have received no meaningful responses. *Id.* ¶ 12. According to Plaintiff "[i]t is unclear what processes if any, the Defendants are actually working on." *Id.* He alleges that "[s]ince Defendants have offered no reason for this delay, it is *per se* unreasonable." *Id.* ¶ 24.

  As an initial matter, the passage of time cannot, standing alone, support a claim of unreasonable delay. *See INS v. Miranda*, 459 U.S. 14, 18 (1982). Moreover, the delay in this case is reasonable considering the impact of the COVID-19 pandemic on immigrant visa application processing.

  "Since March 2020, the COVID-19 pandemic has dramatically affected the Department of State's ability to process immigrant visa applications."[1] As Defendants explain, at the beginning of the COVID-19 pandemic, routine visa services were suspended at all U.S. Embassies and Consulates.[2] Doc. No. 5 at 4. Services resumed in July 2020. *Id.* However, a report from the National Visa Center ("NVC") explains that the disruption continues to severely impact the number of visas that the United States is able to process, resulting in a large backlog of applications.[3] *Id.* The NVC explains that constraints vary based on local conditions and restrictions, including local and national

---

[1] *See* U.S. Dep't of State – Bureau of Consular Affairs, Suspension of Routine Visa Services (last updated July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html. The Court takes judicial notice of the publicly available information contained on the various U.S. Department of State websites as the authenticity of the information contained therein is not subject to reasonable dispute. *See* Fed. R. Evid. 201(b)(2).
[2] *See id.*
[3] *See* U.S. Dep't of State – Bureau of Consular Affairs, National Visa Center (NVC) Immigrant Visa Backlog Report, (last updated Dec. 2022), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html.

lockdowns, travel restrictions, quarantine regulations, and other measures taken by the embassies and consulates to contain the spread of COVID-19.[4]  *Id.*  As of December 2022, the NVC reported that 411,359 applicants were ready for interviews as of November 30 and 33,406 applications were scheduled for interviews in December 2022.[5]  *Id.*  This results in 377,953 applicants who are ready for but pending scheduling of an interview.[6]  *Id.*  For reference, in 2019 (before the COVID-19 pandemic), on average only 60,866 applicants per month were waiting for the scheduling of the interview.[7]  *Id.*

Turning to the *TRAC* factors, first the Court finds that the only relevant factors are one, three, four, and five; neither the statute nor the regulations set forth a timeline for visa application processing (factor two),[8] and there is no evidence Defendants have engaged in any improper conduct (factor six).  *See Vaz*, 33 F.4th at 1138 n.6.

The first factor is the most important, though not determinative, *see A Cmty. Voice v. EPA*, 878 F.3d 779, 786 (9th Cir. 2017), and considers "whether the time for agency action has been reasonable." *Nat. Res. Def. Council, Inc. v. EPA*, 956 F.3d 1134, 1139 (9th Cir. 2020).  Here, Plaintiff has pleaded a four-year delay.  Although "a reasonable time for agency action is typically counted in weeks or months, not years," *Nat. Res. Def. Council*, 956 F.3d at 1139 (quoting *A Cmty. Voice*, 878 F.3d at 787 (internal quotation marks omitted)), the Court nonetheless finds that this factor weighs in Defendants' favor.  According to the Complaint, Plaintiff's application was approved by USCIS just two (2) months before the onset of the COVID-19 pandemic and thus quickly became subject to

---

[4] *See id.*
[5] *See id.*
[6] *See id.*
[7] *See id.*
[8] Contrary to Plaintiff's assertion, 8 U.S.C. § 1571(b) clearly applies to the processing of immigrant benefit applications by USCIS, not immigrant visa applications by consular officials at the State Department.  "Furthermore, even if § 1571 applied to this case, it is 'non-binding legislative dicta.'" *El Centro Reg'l Med. Ctr. v. Blinken*, No. 3:21-cv-00361-DMS-BDD, 2021 U.S. Dist. LEXIS 138825, at *11 (S.D. Cal. July 23, 2021) (first quoting *Mohsenzadeh v. Kelly*, 276 F. Supp. 3d 1007 (S.D. Cal. 2017); and then citing *Yang v. Cal. Dep't of Social Servs.*, 183 F.3d 953, 959–62 (9th Cir. 1999)).

the shut-down.  Next, as Defendants acknowledge, this delay is "less tolerable" since Plaintiff's and his wife's health and welfare are at stake.  *See* Compl. ¶ 1.  However, the apparent reason for the delay—policies designed to slow the spread of COVID-19—also greatly implicates human health and welfare.  *See El Centro Reg'l Med. Ctr.*, 2021 U.S. Dist. LEXIS 138825, at *11–12.  Fourth, as many courts have acknowledged, *see Jain v. Renaud*, No. 21-cv-03115-VKD, 2021 U.S. Dist. LEXIS 113113, at *17 (N.D. Cal. June 16, 2021) (collecting cases), allowing Plaintiff to "jump the queue" would be unjust—a point discussed in more detail below.  Plaintiff in opposition contends that he does not seek to jump the line but instead takes issue with others skipping ahead of him in line.  *See* Doc. No. 8 at 20.  However, it is for the appropriate agencies or Congress to determine priority, not this Court.  Fifth, the Court recognizes that Plaintiff and his wife are suffering during this prolonged period of separation, and the Court is particularly sensitive to Ms. Nilforoush's medical conditions.  However, even assuming Plaintiff obtains the relief he seeks, there is no guarantee that his visa application will be approved and thus that this suffering will end.  In light of these factors, the Court determines that the delay of adjudication in this case is reasonable and therefore Plaintiff fails to state a plausible claim for relief under the APA.

Further, if the Court were to convert Defendants' motion to one for summary judgment and consider the parties' evidence, the outcome would be the same.  "Federal Rule of Civil Procedure 12(b)(6) specifically gives courts the discretion to accept and consider extrinsic materials offered in connection with these motions, and to convert the motion to one for summary judgment when a party has notice that the district court may look beyond the pleadings."  *Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) (quoting *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1207 (9th Cir. 2007) (internal quotation marks omitted)).  Defendants submitted two declarations in support of their motion to dismiss, and Plaintiff responded by providing his own declaration.  Thus, both parties were on notice that the Court may look beyond the pleadings and consider this evidence.  Additionally, it is unlikely that discovery would

uncover any additional, relevant information. The parties' evidence reveals the undisputed status of Plaintiff's visa application and the factors impacting its processing. Therefore, if the Court were to convert Defendants' motion to one for summary judgment, it is clear that there is no genuine dispute of material fact, and that Defendants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Vaz*, 33 F.4th at 1135–36 (noting that by considering evidence outside of the complaint in assessing the *TRAC* factors, the court converted the motion to dismiss into a motion for summary judgment).

Plaintiff avers that on September 6, 2018, he properly filed with USCIS a visa application for his wife, Ms. Nilforoush. Doc. No. 8-1 ("Pl. Decl.") ¶ 4. According to Plaintiff, on November 22, 2019, USCIS approved this visa petition, and the case was assigned the Department of State Visa Application Number ABD2020518003. *Id.* ¶¶ 5, 6.

As Defendants explain, once USCIS approves a Form I-130 for consular processing, the case is forwarded to the NVC for pre-processing.[9] A petitioner is then required to submit fees, forms, and supporting documents to the NVC.[10] A beneficiary must then complete an electronic application for an immigrant visa and appear before a consular officer at the appropriate U.S. Embassy or Consulate for the execution of the application and an interview. *See* 8 U.S.C. §1202(e); 22 C.F.R. §§ 42.63, 42.64.

Plaintiff contends that following USCIS approval, he submitted the Immigrant Visa and Alien Registration Application Form (DS-260 confirmation number AA009VXAOR) on December 21, 2020. Pl. Decl. ¶ 7. On March 24, 2021, Plaintiff was notified that his wife's case was "documentarily qualified"—namely, that the NVC had received all of the fees, forms, and documents required prior to attending an

---

[9] *See* U.S. Dep't of State – Bureau of Consular Affairs, Immigrant Visa Process, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visaprocess/step-1-submit-a-petition.html (last visited Dec. 13, 2022).
[10] *Se id.*

interview. *Id.* ¶ 9. From March 24, 2021 to July 17, 2022, Plaintiff's wife received notice via email every sixty (60) days indicating that she was awaiting scheduling of an interview. *Id.* ¶ 10.

In support of their motion, Defendants offer a declaration from State Department Attorney Adviser Chloe Peterman, which confirms Plaintiff's narrative of the status of his visa application. Doc. No. 5-1 ("Peterman Decl."). Ms. Peterman explains that the Consular Consolidated Database of the U.S. Department of State, Bureau of Consular Affairs reflects that Plaintiff filed a Form I-130, Petition for Alien Relative, with the Department of Homeland Security, United States Citizenship and Immigration Services on behalf of his wife, Ms. Nilforoush, a national and resident of Iran. Peterman Decl. ¶ 3; Doc. No. 5 at 2. The visa petition was received by the NVC and a case was created on January 18, 2020, case number ABD2020518003. *Id.* ¶ 4. The visa application became "documentarily qualified" for interview on March 24, 2021. *Id.* ¶ 5. Ms. Nilforoush is currently awaiting availability of an interview appointment, "at which time the case file will be transferred to the U.S. Embassy in Abu Dhabi." *Id.* ¶ 6.

Plaintiff states that he emailed the NVC twice in March and May 2022 asking for an expedited scheduling of his wife's interview. Pl. Decl. ¶¶ 11, 12. The NVC denied both requests. *Id.*

Defendants also offer a declaration by Immigrant Visa Chief Benjamin B. Chapman. Doc. No. 5-2 ("Chapman Decl."). Mr. Chapman's declaration highlights the external factors impacting the processing of Plaintiff's visa application. He first explains that a fully staffed Immigrant Visa ("IV") Unit at the U.S. Embassy in Abu Dhabi, United Arab Emirates consists of two U.S. hires and five local employees. Chapman Decl. ¶ 4. In Fiscal Year 2022, one local employee retired and the position remails unfilled. *Id.* With respect to the impact of COVID-19 on the IV Unit, he further explains:

> In March 2020, the Consular Section suspended consular operations and provided a limited amount of emergency [American Citizen Services] and

other urgent consular service. In July 2020, the Consular Section resumed limited scheduling of immediate relative and certain priority employment-based (e.g., health care workers) IVs. In August 2020, the Consular Section increased the scheduling of immediate relative, family-based, and employment-based cases. From January 2021 to May 2021, post operated under a 50% in office staffing cap to mitigate the transmission of COVID-19. In June 2021, the Consular Section resumed routine [American Citizen Services], IV and [Non-Immigrant Visa] services.

*Id.* ¶ 6.

Mr. Chapman notes, that, "[a]s a result of the reduction in consular services due to the steps taken to protect the health and safety of U.S. Embassy personnel and the public, in October 2021, the U.S. Embassy had a backlog of [immigration visas] across all categories" of visas. *Id.* ¶ 10.

Mr. Chapman also details the prioritization of IV applications. Namely, in October 2021, the State Department's Visa Office of the Bureau of Consular Affairs "requested the [immigration visa] unit prioritize the scheduling of [immigration visas] for health care workers . . . to assist with the COVID-19 pandemic response and health care worker shortage in the United States. *Id.* ¶ 8. He further explains that throughout Fiscal Year 2022, "the U.S. Embassy prioritized the processing of visa services for certain individuals who were evacuated from Afghanistan" and that "Abu Dhabi is the site of significant U.S. government processing for Afghan nationals that fled Afghanistan following the fall of Kabul in August 2021." *Id.* ¶ 9. "To address the surge of special immigrant visas ("SIV") for Afghan nationals . . . , the IV Unit was allocated two adjudicators and two LE staff who are temporarily assigned to the IV Unit until the end of August 2022." *Id.* ¶ 4. In the Spring of 2022, the IV Unit also "allocated 30 IV processing days exclusively for this population, which required the U.S. Embassy to reschedule appointments for interviews for other visa applicants." *Id.* ¶ 9.

Therefore, there are no factual disputes concerning the status of Plaintiff's visa application, the existence of external factors impacting its processing, and the fact that other visa applications have been prioritized. And this evidence reveals that the delay

here is not unreasonable as a matter of law.

The Court's analysis of the *TRAC* factors above is largely the same after reviewing the evidence and it remains clear that dismissal is appropriate. Plaintiff's wife has been awaiting scheduling of her interview since March 2021. This was just some two (2) months after the COVID-19 pandemic began and during a time in which interview services were suspended. Further, although interviews resumed in July 2020, Plaintiff's application became further stalled by events in Afghanistan in August 2021. During this time, Defendants prioritized healthcare workers and Afghan nationals who fled following the fall of Kabul. Defendants' responses to these circumstances greatly implicate human health and welfare. It is not for the Court to determine priority and it would be inappropriate to direct that Plaintiff "jump the queue." The State Department has limited resources and over three hundred thousand applicants pending scheduling of an interview. Requiring Defendants to schedule Plaintiff's wife's interview forthwith would interfere with their discretion in prioritizing visa requests and allocating resources. *See Vaz*, 33 F.4th at 1138. Therefore, the Court finds that there is no genuine dispute of material fact and that the delay of adjudication in this case is reasonable as a matter of law. Accordingly, for this reason as well, the Court **GRANTS** Defendant's motion and **DISMISSES** Plaintiff's APA claim.

**B.     Mandamus Act Claim**

Plaintiff's second claim arises under the Mandamus Act. Pursuant to the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. However, as the Ninth Circuit has stated:

> Mandamus is an extraordinary remedy and is available to compel a federal official to perform a duty only if: (1) the individuals claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly

prescribed as to be free from doubt, and (3) no other adequate remedy is available.

*Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (quoting *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998) (internal quotation marks omitted)).

Defendants argue that "Congress has provided no deadline for scheduling of an immigration visa application" and that "[t]here is no 'clear nondiscretionary duty' for Defendants to schedule a consular interview for a non-citizen to make an application within any particular time period and therefore the Court may not find a valid federal cause of action under the Mandamus Act." Doc. No. 5 at 7 (citations omitted).

In the context of processing immigration petitions, courts have wrestled with whether the adjudication of these applications is discretionary or nondiscretionary. However, this Court has recently spoken on the impact of the COVID-19 pandemic on visa application processing and found the circumstances insufficient to give rise to jurisdiction under the Mandamus Act:

> . . . for jurisdiction to attach under the Mandamus Act, Plaintiffs must demonstrate that their entitlement to an immediate adjudication is "clear and certain." To do so, Plaintiffs must demonstrate that the government's delay has become so unreasonable that they are entitled to a decision on the application at the present time. However, Plaintiffs cannot do so in light of the facts Defendant has introduced to demonstrate the reasonableness of the delay in this case. Approximately three months after ECRMC filed its Form I-140 Petition, the worldwide COVID-19 pandemic prompted OMB to issue a directive requiring the State Department to minimize face-to-face interactions to slow transmission of the virus. (Peterson Decl. ¶ 4.) In response to that directive, the State Department suspended all routine visa services at consular posts worldwide to ensure the safe provision of mission critical and emergency services. (*Id.*) The Court finds that the delay in this case is reasonable considering the operational limitations the government imposed in response to the COVID-19 pandemic. Plaintiffs' claim for immediate adjudication therefore lacks the clarity and certainty required to confer subject matter jurisdiction under the Mandamus Act.

2021 U.S. Dist. LEXIS 138825, at *6–9.

Here, as in *El Centro Regional Medical Center*, the record clearly demonstrates that the delay is not unreasonable. True, Plaintiff has pleaded a delay of some four years. However, Defendants factually challenge these allegations, arguing that Plaintiff makes no reference to the pandemic and as a result, cannot show that processing of the visa application is "unreasonably delayed." Doc. No. 5 at 6. As described in detail above, Defendants have put forth overwhelming evidence that Plaintiff's visa application has been impacted by the COVID-19 pandemic and the fall of Kabul in 2021. The backlog of applications is a global problem affecting thousands, and the processing of Plaintiff's petition in particular is further complicated by the events in Afghanistan. For context, as of November 2022, Plaintiff's wife is one of 377,953 applicants who are ready for but pending scheduling of an interview.[11] *Id.* at 4.

In opposition, Plaintiff urges that Defendants have a nondiscretionary duty to adjudicate the visa application and that he has adequately pleaded that Defendants have unreasonably delayed that adjudication. Doc. No. 8 at 10. However, it is clear that "agency inaction" is not the cause of the delay. *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007); *see also Zhu v. Chertoff*, No. C 07-0115 JL, 2007 U.S. Dist. LEXIS 114174, at *17 (N.D. Cal. June 20, 2007) ("Mandamus actions serve to highlight deficiencies in agency inaction whereby the federal courts may intervene."). Rather, the delay is clearly the result of external factors and efforts by Defendants to slow the spread of COVID-19 and prioritize health care workers and Afghan nationals who fled after the fall of Kabul. Thus, rather than correct agency inaction, "Plaintiff's suit simply seeks to force [Defendants] to complete the adjudication in a more expeditious manner." *Li*, 482 F. Supp. 2d at 1178. This is insufficient for jurisdiction under the Mandamus Act. So long as Defendants are making reasonable efforts to complete the adjudication of

---

[11] *See* U.S. Dep't of State – Bureau of Consular Affairs, Suspension of Routine Visa Services (last updated July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html.

Plaintiff's application—namely, by working to reduce the backlog and schedule interviews—the Court concludes that the pace of the processing is committed to Defendants' discretion. *See id.*

Even assuming the Mandamus Act requirements were satisfied, there are compelling reasons to deny relief here. As one district court explained:

> There is no question that the delay in question is systemic - that is, it is not an isolated issue applicable only to [plaintiff] or some limited group. It is also clear from the record that both HHS and Congress are aware of the problem and the possible solutions. In light of this, the Court fails to see how mandamus would address the problem in any constructive way. [Plaintiff] neither requests, nor would it likely be appropriate to grant, wide systemic relief to all similarly situated parties. This would presumably either require the Court to order the Secretary to hire more ALJs, for which it does not appear to have budgeted funds, or somehow order the Secretary, contrary to [D]HHS's statutory mandate, to reduce the denial of claims. Even if it might be appropriate to order an executive agency to take similar kinds of actions in very serious circumstances, there is no suggestion that it would be appropriate where the issue fails to have a constitutional dimension and the political branches are already working out a solution to the problem, albeit slowly. Given this, mandamus would merely allow [plaintiff] to jump the queue of other identically situated parties. Not only would this be arbitrary and unjust, it would encourage a barrage of mandamus actions by others seeking to also jump to the front of the line. This would both greatly burden the courts and would ultimately be self-defeating - not everyone can jump to the front of the line at the same time.

*Casa Colina Hosp. & Ctrs. for Healthcare v. Burwell*, No. CV 15-3990 DSF (ASx), 2015 U.S. Dist. LEXIS 148378, at *2 (C.D. Cal. Oct. 30, 2015). The Ninth Circuit affirmed the district court's decision, albeit in an unpublished memorandum, noting that "even if the three [mandamus] elements are satisfied," the "extraordinary remedy of mandamus lies within the discretion of the trial court," and finding that "[t]he district court appropriately concluded that granting relief would merely allow [the plaintiff] 'to jump the queue of other identically situated parties' and would therefore achieve an arbitrary result and 'encourage a barrage of mandamus actions by others.'" *Casa Colina Hosp. &*

*Ctrs. for Healthcare v. Wright*, 698 F. App'x 406, 407 (9th Cir. 2017).

As discussed above, the delay in processing visa applications is systemic and it is unquestionably one of the many unfortunate results of recent events, including the COVID-19 pandemic and the fall of Kabul. It would be inappropriate for the Court to direct Defendants to process the backlog faster, especially given the variables and many different host countries at play. Alternatively, to allow Plaintiff to "jump the queue" would not only be arbitrary and unjust but it would open federal courts to a barrage of mandamus actions by the masses that are awaiting a decision on their immigration applications since the beginning of the COVID-19 pandemic. As a result, even assuming the factors were satisfied, the Court finds that mandamus is inappropriate in this case.

For these reasons, the Court **GRANTS** Defendants' motion and **DISMISSES** Plaintiff's claim for relief under the Mandamus Act for lack of subject matter jurisdiction.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion and **DISMISSES** this action. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close this case.

**IT IS SO ORDERED**.

Dated: December 14, 2022

HON. MICHAEL M. ANELLO
United States District Judge